**2014-1363**
**(Reexamination No. 90/009,918)**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**IN RE: INVENTOR HOLDINGS, LLC,**
**APPELLANT**

**APPEAL FROM**
**THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
**BOARD OF PATENT APPEALS AND INTERFERENCES**

**APPELLANT'S BRIEF**
**(CORRECTED)**

Filed on behalf of INVENTOR HOLDINGS, LLC, Appellant,

Tarek N. Fahmi
Ascenda Law Group, PC
84 W. Santa Clara Street, Suite 550
San Jose, CA 95113-1812

Tel: 866-877-4883
Email: tarek.fahmi@ascendalaw.com

Attorney for Appellant

## CERTIFICATE OF INTEREST AND CORPORATE DISCLOSURE STATEMENT

Counsel for Appellant-Patent Owner, Inventor Holdings, LLC, certifies the following:

1. The full name of every party or amicus represented by me is: INVENTOR HOLDINGS, LLC.

2. The name of the real party in interest represented by me is: INVENTOR HOLDINGS, LLC, located at 2 High Ridge Park, Stamford, CT 06905.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: PATENT PROPERTIES, INC. and WALKER DIGITAL, LLC.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Tarek N. Fahmi
Amy J. Embert
ASCENDA LAW GROUP, PC
84 W. Santa Clara Street
Suite 550
San Jose, CA 95113-1812

Abraham Hershkovitz
HERSHKOVITZ &
ASSOCIATES, PLLC
2845 Duke Street
Alexandria, VA 22314

Date  May 19, 2014

/s/Tarek N. Fahmi
Tarek N. Fahmi

ii

# TABLE OF CONTENTS

**CERTIFICATE OF INTEREST AND CORPORATE DISCLOSURE STATEMENT** ....................................................................... ii

**TABLE OF AUTHORITIES** ..................................................................... vi

**STATEMENT OF RELATED CASES** ........................................................ 1

**JURISDICTIONAL STATEMENT** ............................................................ 1

**STATEMENT OF THE ISSUES PRESENTED FOR REVIEW** ................................. 2

**STATEMENT OF THE CASE** ................................................................... 3

   **A. The '505 Patent.** ........................................................................... 4

   **B. The Cited References.** ................................................................... 6

**SUMMARY OF THE ARGUMENT** ............................................................. 8

**ARGUMENT** ....................................................................................... 9

   **A. The Rejections Based on *Reimer* Should be Reversed Because the PTAB's Claim Constructions are Impermissibly Broad.** ............................. 9

   **B. When the Claims are Properly Construed, *Reimer* Cannot Properly be Read as Anticipating the Claims.** ................................................. 14

     1. *Reimer* Fails to Disclose a Single Data Processing Apparatus, Hence the Rejection of Claim 7 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed ...................................... 14

     2. *Reimer* Fails to Disclose Synchronizing the Requested Supplemental Information to the Video Program Using the Synchronization Information, Hence the Rejection of Claim 7 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed. ....................... 20

     3. *Reimer* Fails to Disclose a Single Server Apparatus that Includes a Controller, a Storage Device, and a Receiver/Transmitter and

Synchronizing Supplemental Information to a Video Program, Hence the Rejection of Claim 1 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed.........................................................22

4. *Reimer* Fails to Disclose Synchronization Information that Comprises a Time-Code and Updating Said Time-Code at Predetermined Intervals, Hence the Rejections of Claims 5, 10, 15, 30, and 33 as being Anticipated by *Reimer* are Not Supported by Substantial Evidence and Should Be Reversed.........................................................................................................23

5. *Reimer* Fails to Disclose Receiving Additional Requests from a Requester to Interactively Change the Requested Supplemental Information Based Upon the Viewed Program and Changing and Transmitting the Requested Supplemental Information in Accordance with the Additional Request, Hence the Rejections of Claims 6, 11, 13, 22, 31, and 37 as being Anticipated by *Reimer* are Not Supported by Substantial Evidence and Should Be Reversed.........................................................24

6. *Reimer* Fails to Disclose a Single Server that Includes a Controller and a Storage Device and A Storage Device Containing a Second Program, Adapted to be Executed by the Controller, for Processing the Request for Supplemental Information, for Receiving Synchronization Information, for Synchronizing the Supplemental Information to the Video Program, and for Transmitting the Synchronized Supplemental Information Through the Data Communication Network to Said Data Processing System, Hence the Rejections of Claims 39 and 41 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed. .......................25

**C. *Reimer* Does Not Teach Verifying that Synchronization is Maintained with the Video Program, Hence the Rejection of Claim 14 in View of *Reimer* is Not Supported by Substantial Evidence and Should be Reversed.........................................................................................................26**

**D. The Combination of *Reimer* and *Feinleib* Does Not Teach a Live Television Broadcast or a Prerecorded Television Broadcast that Includes Synchronization Information or the Display of Supplemental Information that is Synchronized a Live Television Broadcast or a Prerecorded Television Broadcast, Hence the Rejection of Claims 23 and 25 in View of the Combination of *Reimer* and *Feinleib* are Not Supported by Substantial Evidence and Should be Reversed.................28**

**E. The Combination of *Reimer* and *Remillard* Does Not Teach All of the Features of Claim 35, Hence the Rejection of Claim 35 in View of the Combination of *Reimer* and *Remillard* is Not Supported by Substantial Evidence and Should be Reversed.**...................................................................29

**F. The Combination of *Reimer* and *Baji* Does Not Teach All of the Features of Claim 36, Hence the Rejection of Claim 36 in View of the Combination of *Reimer* and *Baji* is Not Supported by Substantial Evidence and Should be Reversed.**...................................................................30

**G. The Combination of *Reimer* and *Feinleib* Does Not Teach All of the Features of Claims 47, 48, and 52-54, Hence the Rejection of Claims 47, 48, and 52-54 in View of the Combination of *Reimer* and *Feinleib* are Not Supported by Substantial Evidence and Should be Reversed.**.........30

**H. The Combination of *Reimer* and *Daum* Does Not Teach All of the Features of Claims 55 and 56, Hence the Rejection of Claims 55 and 56 in View of the Combination of *Reimer* and *Daum* are Not Supported by Substantial Evidence and Should be Reversed.**.............................................31

**CONCLUSION** ............................................................................................31

**ADDENDUM** ............................................................................................A-1

**PROOF OF SERVICE** ...............................................................................A-2

**CERTIFICATE OF COMPLIANCE** ...........................................................A-3

# TABLE OF AUTHORITIES

## CASES

*Harari v. Lee*,
    656 F.3d 1331 (Fed. Cir. 2011) .................................................................. 15

*In re Gartside*,
    203 F.3d 1305 (Fed. Cir. 2000) .................................................................. 18

*In re Suitco Surface Inc.*,
    603 F.3d 1255 (Fed. Cir. 2010) ............................................................ 10, 15

*N Am. Vaccine, Inc. v. Am. Cyanimid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993) ................................................................ 15, 16

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*,
    357 F.3d 1319 (Fed. Cir. 2004) .................................................................. 27

*Phillips v. AWH Corporation*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................. 12

*Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*,
    711 F. 3d 1348 (Fed. Cir. 2013) .......................................................... 11, 12

*Retractable Tech. v. Bechton Dickenson and Co.*,
    653 F. 3d 1296 (Fed. Cir. 2011) ................................................................ 16

*Tempo Lighting, Inc. v. Tivoli, LLC*,
    No. 2013-1140, 2014 WL 503128 (Fed. Cir. Feb. 10, 2014) ........................... 10

*Verdegaal Bros. v. Union Oil Co. of California*,
    814 F.2d 628 (Fed. Cir. 1987) .................................................................. 14

**STATUTES**

28 U.S.C. § 1295(a)4(A) ........................................................................................2

35 U.S.C. § 103(a) ...............................................................................................27

35 U.S.C. § 134 .....................................................................................................2

35 U.S.C. § 141 .....................................................................................................1

35 U.S.C. § 306 .....................................................................................................2

## STATEMENT OF RELATED CASES

There are no other appeals in or from the proceedings below that were previously before this or any other appellate court. There are no cases known to counsel to be pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal. Previously pending matters involving the subject '505 Patent were:

a. *Walker Digital LLC v. Ayre Acoustics Inc. et al.*, Case No. 1:11-cv-00321 (DED) – terminated January 11, 2013.

b. *Walker Digital LLC v. Apple Inc. et al.*, Case No. 1:11-cv-00363 (DED) – terminated October 19, 2011.

c. *In re Blu-Ray Disc Players, Components Thereof and Products Containing Same*, Investigation No. 337-TA-824 (ITC) – terminated January 11, 2013.

## JURISDICTIONAL STATEMENT

This is an appeal under 35 U.S.C. § 141 of a final order of the USPTO Patent Trial and Appeal Board ("PTAB" or "Board") in *Ex Parte* Reexamination No. 90/009,918, rejecting claims 1-64 of U.S. Patent 6,263,505 (the "'505 Patent"). Patent Owner timely filed and served its Notice of Appeal within the sixty-day time

period established by 35 U.S.C. § 142 on January 21, 2014. Notice of Appeal,

AX00034. The PTAB had jurisdiction over the matter below under 35 U.S.C. §§ 134

and 306, and this Court has sole jurisdiction over this appeal under 28 U.S.C. §

1295(a)4(A).


## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

The issues presented for review are as follows:

(a) Whether the PTAB erred in affirming the rejection of claims 1-13, 15-22,

24, 26-34, 37-43, 57-59 and 64 as anticipated by *Reimer*, U.S. Patent 5,559,949,

(hereinafter "*Reimer*") under 35 U.S.C. § 102(e)?

(b) Whether the PTAB erred in affirming the rejection of claim 14 as

unpatentable over *Reimer* under 35 U.S.C. § 103(a)?

(c) Whether the PTAB erred in affirming the rejection of claims 23 and 25 as

unpatentable over *Reimer* in view of *Feinleib*, U.S. Patent 6,637,032, (hereinafter

"*Feinleib*") under 35 U.S.C. § 103(a)?

(d) Whether the PTAB erred in affirming the rejection of claims 7, 23 and 26

as unpatentable over *Reimer* in view of *Remillard*, U.S. Patent 5,561,709, (hereinafter

"*Remillard*") under 35 U.S.C. § 103(a).

(e) Whether the PTAB erred in affirming the rejection of claim 37 as

unpatentable over *Reimer* in view of *Baji*, U.S. Patent 5,027,400, (hereinafter "*Baji*") under 35 U.S.C. § 103(a)?

(f) Whether the PTAB erred in affirming the rejection of claims 44-46, 49, 50 and 60-63 as anticipated by *Reimer* under 35 U.S.C. § 102(e)?

(g) Whether the PTAB erred in affirming the rejection of claim 51 as unpatentable over *Reimer* under 35 U.S.C. §103(a)?

(h) Whether the PTAB erred in affirming the rejection of claims 47, 48 and 52-54 as unpatentable over *Reimer* in view of *Feinleib* under 35 U.S.C. §103(a)?

(i) Whether the PTAB erred in affirming the rejection of claims 55 and 56 as unpatentable over *Reimer* in view of *Daum*, U.S. Patent No. 5,815,634, (hereinafter "*Daum*") under 35 U.S.C. §103(a)?

## STATEMENT OF THE CASE

Claims 1-64 of U.S. Patent 6,263,505 (the "'505 Patent") stand rejected as being anticipated by or obvious in view of *Reimer*, either considered alone or in combination with various other references. PTAB Decision at 1-2, AX000002-000003. Claims 1-43 are the original patented claims, and claims 44-64 are proposed new claims. Claims 1, 7, 12, 16, 26, 27, 32, 39-56 and 60-63 are independent claims.

This proceeding arose from a request by Third Party Requester, Patentblast, for

*ex parte* reexamination of the '505 Patent. In a final decision dated November 25, 2013, the PTAB found claims 1-64 unpatentable, primarily because the claims were construed so "as not [to require] a 'single' computer or device." *Id.* at 5, AX00006. The Board reversed the Examiner's determination that claims 55 and 56 failed to have adequate written description support and the Examiner's determination that claims 55 and 59 failed to comply with 35 U.S.C. § 112, second paragraph. *Id.* at 15-16, AX000016-000017. Previously, the Examiner had withdrawn earlier rejections of claim 54 and 64 under 35 U.S.C. § 112, first paragraph and of claim 51 under 35 U.S.C. § 305. *Id.* at 2, AX000003.

## A. The '505 Patent.

The '505 Patent relates to an apparatus, method, and program for providing supplemental information related to video programs (*e.g.*, live broadcast television programs or a time-shifted recordings thereof). '505 Patent, Abstract, AX001141. Through a computer network interface, a user can request and receive specific supplemental information related to a video program. *Id.* Alternatively, the supplemental information can be retrieved from a CD-ROM, or similar storage device. *Id.* The supplemental information is synchronized to the video program using a time-code (*i.e.*, synchronization information related to the video program), which is integrated with the video program. *Id.* This enables the supplemental information to

4

be viewed and/or listened to in harmony with the events or action of the video

program. *Id.*

Claim 7, which is characteristic of the claims under rejection, recites:

A method for providing supplemental information using *a data processing apparatus* including a CPU and a storage device operatively connected to the CPU and containing a program adapted to be executed by the CPU for processing a request for the supplemental information related to a video program and providing the requested supplemental information, said method comprising the steps of:
receiving a request for the supplemental information related to the video program;
receiving synchronization information related to the video program;
processing the request for the supplemental information by having the CPU in *the data processing apparatus* execute the program;
synchronizing the requested supplemental information to the video program using the synchronization information; and
transmitting the requested supplemental information.

*Id.* at 12:16-36 (emphasis added), AX001153. During reexamination, Patent Owner's

expert, Dr. Wolfe, a 25-year veteran of the computer industry, testified that a person

of ordinary skill in the art would understand this claim to be reciting a single data

processing apparatus and/or integrated display device:

From the standpoint of the person of ordinary skill in the art, [claim 7] is quite specific as to how and where the synchronization process is performed. The reader is advised that the process is performed by a certain "data processing apparatus" that includes both a CPU and a storage device operatively connected thereto, and that it is through the CPU's processing of

a request for supplemental information that the synchronization
of requested supplemental information to a video program is
effected. That is, the same apparatus that contains the program
executed by the CPU for processing the request for the
supplemental information and providing same, is the apparatus
that also does the processing.

In the context of the disclosure of the Walker patent then, it is
clear to the person of ordinary skill in the art that the claim is
reciting a single device which stores the program for processing
the synchronization request and which executes that program.

Wolfe Declaration of June 22, 2012 at ¶¶ 26-27, AX000501. Such a data processing

apparatus /integrated

display device is

illustrated in Figure 3

of the '505 Patent,

reproduced here. '505

Patent, FIG. 3,

AX001145.



FIG. 3 of the '505 Patent

## B. The Cited References.

*Reimer*, the primary cited reference, discloses a distributed data processing

environment, *Reimer*, 6:26-37, AX00190, that includes a plurality of distributed

devices including multiple user devices (*e.g.*, set top boxes in combination with

television monitors, or computers) for receiving control and information messages from human operators. *Id.* The user devices receive information from other remote devices (*e.g.*, index information database 122, foundation information interface component 108, foundation information database 112, etc.) via a communication medium 124. *Id.* at 6:24-41, AX001190.

*Feinleib* describes systems for synchronizing enhancing content with a video program using closed captioning script for the video program. *Feinleib*, 1:8-13, AX001211. *Feinleib* teaches provision of supplemental content relating to live media (*e.g.*, news, sports, debates, etc.) using a distributed system of disparate components including multiple content servers connected to a data network. *Id.* at 4:16-29, AX001212. Additionally, the disparate components of *Feinleib* include a broadcaster center, a broadcast station cable headend, and multiple client devices. *Id.*

*Remillard* provides systems for accessing videotext by interfacing independent computer systems through existing telephone systems. *Remillard* 1:24-25, AX001230. The system includes an integral card reader for reading credit or debit cards. *Id.* at 3:31-35, AX001231.

*Baji* describes a multi-component bidirectional broadcast system for broadcasting content to subscribers. *Baji*, Abstract, AX001236. Subscribers may pay for content via a payment method window. *Id.* at 22:10-17, AX001294.

*Daum* provides an audio/video decoder/decompressor for decoding or decompressing a compressed and/or encoded audio/video data stream, which is provided to a user. *Daum*, Abstract, AX001300. The system is also capable of controlling the playback of audio and video signals from an encoded data stream and providing synchronization between the audio and video signals. *Id.* at 1:12-16 and 3:52-55, AX001319 and AX001320.

## SUMMARY OF THE ARGUMENT

All of the substantive art rejections maintained by the PTAB should be reversed. When read and understood by a person of ordinary skill in the art, the claims of the '505 Patent require a single data processing apparatus and/or an integrated display device. The Board, however, has maintained the Examiner's rejections, which rely upon "evidentiary justification from the MPEP" for the proposition that the claims are not so limited. *See, e.g.*, Ex. Ans. at 80, 84, AX000176, 000180. Such a conclusion finds no support in the record.

During the reexamination, Patent Owner provided testimony from a 25-year veteran of the personal computer and electronics industry attesting to the meaning of the claims at issue. Neither the Examiner nor the Board provided substantive evidence to contradict this testimony. Instead, the Examiner provided only argument and states

that he disagreed with the expert's positions. *Id.* at 78, AX000174. Contradiction of this sort is not evidence. Nor is the MPEP's recitation of boilerplate law concerning the broadest reasonable construction standard. Indeed, the Examiner unreasonably marginalizes the entire point of the expert's testimony. The issue is not whether the claims recite the "single computer" limitation, nor whether the claims are to be interpreted under the broadest reasonable construction standard. Rather, the issue lies in establishing what the basis of the scope of the broadest reasonable construction is. Because the Examiner's (and, hence the Board's) position is insupportable under the law, all of the present claims should be deemed patentable over *Reimer*, whether considered alone or in combination with the remaining references.

## ARGUMENT

### A. The Rejections Based on *Reimer* Should be Reversed Because the PTAB's Claim Constructions are Impermissibly Broad.

At the core of the present case is a question of claim construction that may determine the outcome of this appeal. As noted above, when viewed from the standpoint of a person of ordinary skill in the art, claim 7, which is characteristic of the claims under rejection, should be construed as reciting a single data processing apparatus and/or an integrated display device. Wolfe Declaration of June 22, 2012 at ¶¶ 26-27, AX000501. In rejecting the claims, however, the Board has relied upon a

dictionary definition for the term "apparatus" and has decided that the "plain meaning" of that term does not preclude the use of multiple materials or equipment. PTAB Decision at 5, AX000006. Because the PTAB's position is insupportable under the law, this issue should be resolved in Patent Owner's favor and all of the present claims should be deemed patentable over *Reimer*.

Claim construction is a matter of law which this Court reviews *de novo*. *Tempo Lighting, Inc. v. Tivoli, LLC*, No. 2013-1140, 2014 WL 503128 at *3 (Fed. Cir. Feb. 10, 2014). Although the USPTO gives claims their broadest reasonable construction during reexamination, "[t]he broadest-construction rubric coupled with the term 'comprising' does not give the USPTO an unfettered license to interpret claims to embrace anything remotely related to the claimed invention. Rather, claims should always be read in light of the specification and teachings in the underlying patent." *In re Suitco Surface Inc.*, 603 F.3d 1255, 1260 (Fed. Cir. 2010) citing *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217 (1940). Furthermore, when the meaning of a term is not clear from a plain reading of the claim, it is the remaining intrinsic evidence, including the written description of the patent that is analyzed to aid in the construction of the term. Indeed, the specification is often the single best guide to the meaning of a disputed term. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 711 F. 3d 1348, 1361 (Fed. Cir. 2013) citing *Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) and *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1326 (Fed. Cir. 2001).

By limiting its analysis to the term "apparatus," considered in isolation, the PTAB has read the claims in a fashion that fails to conform to the guidance provided by the specification. Claim 7, for example, does not recite merely "an apparatus," but rather *a data processing apparatus* that is made up of particular constituents. Dr. Wolfe explained that the person of ordinary skill in the art would understand such a data processing apparatus to be "a single device which stores the program for processing the synchronization request and which executes that program." Wolfe Declaration of June 22, 2012 at ¶ 27, AX000501. Rather than searching for a definition applicable to any *apparatus,* when deciding upon a proper construction the Board should have considered the particular *data processing apparatus* that is the subject of the claims.

The *Power Integrations* Court, when considering the construction of the term "frequency variation signal," addressed a similar issue.

> Unless the inventor intended a term to cover more than the ordinary and customary meaning revealed by the context of the intrinsic record, it is improper to read the term to encompass a broader definition simply because it may be found in a dictionary, treatise, or other extrinsic source. *Nystrom v. TREX Co.*, Inc., 424 F.3d 1136, 1145 (Fed. Cir. 2005). In any event, our inquiry here starts with the intrinsic record, including the specification, and not with a dictionary definition of the disputed term. *Phillips*, 415 F.3d at 1321 ("The problem is that if the district court starts with the broad dictionary definition in every case and fails to fully

appreciate how the specification implicitly limits that definition, the error will systematically cause the construction of the claim to be unduly expansive.").

*Power Integrations*, 711 F.3d at 1362. Like the term "frequency variation signal" in *Power Integrations,* there is nothing in the record here that suggests the inventors intended the term "data processing apparatus" to cover more than that revealed by context of the specification. Resorting to a dictionary to discern a broader meaning of the term is both unnecessary and improper. Dr. Wolfe was able to discern the meaning of the term from the intrinsic record and none of the PTAB, the Examiner or the Third Party Requester provided any contradictory evidence concerning the understanding of a person of ordinary skill in the art that would suggest Dr. Wolfe's interpretation was either wrong or needed supplementing through the use of an extrinsic source. Indeed, the Board offered no explanation as to why the proffered dictionary definition should be selected over the construction provided by one of ordinary skill in the art (Dr. Wolfe).

By failing to fully appreciate how the intrinsic record, in the form of the specification, implicitly limits the definition of "data processing apparatus" the Board has adopted a construction of the claims that is unduly expansive. *Phillips v. AWH Corporation*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). The "broadest reasonable construction" standard is not a license to simply disagree with (or overlook the

importance of) testimony concerning how a person of ordinary skill in the art would read the claims. Instead, the broadest reasonable construction must remain consistent with the specification and consistent with the understanding of the person of ordinary skill in the art. In this reexamination proceeding it is only Dr. Wolfe's declaration that establishes this understanding. In fact, when confronted with Dr. Wolf's testimony, the Examiner merely remarked that, "The term apparatus is examined as 'a set of equipment designed for a particular use'," Final Office Action of March 22, 2012, at 82-83, AX000658-659, and cited a definition from a 2012 version of an on-line dictionary. In doing so, the Examiner provided no evidence (or even an allegation) that this relied-upon definition was one that was current at the time of the invention and/or that a person of ordinary skill in the art would (or could) have used it. *Id.* Although the Board reverted to relying upon a 1990 dictionary, PTAB Decision at 5, AX00006, the Board cited no evidence that this source was any better than the Examiner's at reveling the understanding of the person of ordinary skill in the art.

The PTAB's unreasonably broad construction of the term "apparatus" suffers from the same deficiencies as the claim constructions at issue in *Power Integrations* and *Suitco Surface* because it fails to consider the context provided by the specification, which discloses only single data processing apparatus embodiments. Any construction that reads the claims in such a way that encompasses something more than this is not

an understanding consistent with that which would be reached of a person of ordinary skill in the art and, consequently, cannot be properly used in determining the validity of the claims over the cited references.

## B. When the Claims are Properly Construed, *Reimer* Cannot Properly be Read as Anticipating the Claims.

1. *Reimer* Fails to Disclose a Single Data Processing Apparatus, Hence the Rejection of Claim 7 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed.

To anticipate a claim, a reference must teach every element of the claim. *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987). *Reimer* fails to meet this requirement at least because *Reimer* fails teach an entire data processing system implemented in a single computer and fails to teach a single computer (*i.e.*, "*a* data processing apparatus") performing each of the steps of the rejected claims. Accordingly, the claims are patentable over *Reimer*.

The Board upheld the Examiner's rejection of claim 7 because the claim was construed so "as not [to require] a 'single' computer or device." PTAB Decision at 5, AX00006. Consequently, the Board found it unnecessary to "address whether *Reimer* describes all limitations of claim 7 in a single computer device." *Id*. As described

above, however, the Board's construction of claim 7 is wrong. Thus, its rational for upholding the rejection of claim 7 is unsupported and should be reversed.

The preamble of claim 7 uses the indefinite article "a" when describing "a data processing apparatus." While "a" or "an" can mean one or more in patent parlance, where there is no indication that the inventors intended the indefinite article to have a meaning other than its normal singular meaning, courts construe it to be singular. *See N Am. Vaccine, Inc. v. Am. Cyanimid Co.*, 7 F.3d 1571, 1575-77 (Fed. Cir. 1993). The general rule for terms that appear in claims containing the open-ended transitional phrase such as "comprising" or "including" is that the indefinite article "a or an" means "one or more." *See Harari v. Lee*, 656 F.3d 1331, 1341 (Fed. Cir. 2011). However, this is not a "hard and fast rule." *Id*. Moreover, in this case the indefinite article for "a data processing apparatus" appears before the use of any open-ended transitional phrase, and so there appears to be even less reason to apply the general rule.

The Board offers no explanation (other than the Examiner's own) as to why reading "a data processing apparatus" as a single device is improper. While claims must be given the broadest reasonable interpretation, that interpretation must be reached in light of the specification, as it would be interpreted by one of ordinary skill in the art. *In re Suitco Surface*, 603 F.3d at 1260. As this Court has acknowledged,

while "there is a fine line between construing the claims in light of the specification and improperly importing a limitation from the specification into the claims" we must not "allow the claim language to become divorced from what the specification conveys is the invention." *Retractable Tech. v. Bechton Dickenson and Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011).

In *N Am. Vaccine*, this Court held that the fact that all references to a term in the specification were singular supported the argument that the term itself should be construed in the singular where the claim used the indefinite article "a." *N Am. Vaccine*, 7 F.3d at 1576-77. Here, examining the specification shows that all of the disclosed embodiments described are singular integrated devices capable of processing the steps of the invention. *See, e.g.*, '505 Patent at 7:48-62 (disclosing a web server that performs the steps of claim 7), AX001151; 10:10-14 ("In this embodiment the integrated display device would execute a standalone computer application designed to synchronize and display the supplemental information."), AX001152; 10:15-18 ("The personal computer 40 could also execute a stand-alone computer application coupled with an integrated simulcast event database to provide synchronized supplemental information to the viewer."), AX001152. Conversely, no embodiments disclose a system composed of components that perform the steps of claim 7 separately. Thus, in order for a reference to anticipate claim 7, it would need to disclose that all of the

steps of claim 7 are performed in a single data processing apparatus having a CPU and

storage device to anticipate claim 7. Indeed, this was the conclusion reached by Dr.

Wolfe. Interpretations to the contrary, such as those adopted by the Board, while

broad, are not reasonable interpretations in light of the specification because they fails

to take into account the very teachings afforded those of ordinary skill in the art and

are divorced from what the specification actually conveys. Accordingly, in the context

of the present proceedings, "a data processing apparatus" should be interpreted to

mean "a single data processing device," which single device is recited in claim 7 but is

not taught by *Reimer*.

Even if the PTAB's construction of "apparatus" were correct, however, *Reimer*

still fails to anticipate claim 7. A plain reading of claim 7 reveals that the claim

requires the use of a data processing apparatus, including a CPU and a storage device

operatively connected to the CPU, and that

> it is clear to the person of ordinary skill in the art that the claim is
> reciting a single device which stores the program for processing
> the synchronization request and which executes that program.

Wolfe Declaration of June 22, 2012, at ¶ 27, AX000501.

*Reimer*, on the other hand, discloses a data processing environment 102 that

includes a plurality of user devices (*e.g.*, set top boxes in combination with television

monitors, or computers) for receiving control and information messages from human

operators. *Reimer*, 6:26-37, AX001190. The user devices receive information from

other remote devices (*e.g.*, index information database 122, foundation information

interface component 108, foundation information database 112, etc.) via a

communication medium 124. *Id.* at 6:26-37, AX001190. Dr. Wolfe has testified that,

> While *Reimer* teaches that some of the devices in Figure 1 can be
> implemented in a single computer, he does not teach that the
> entire invention can be implemented in a single computer. *Reimer*
> always teaches that a plurality of computers, distributed across
> some type of network, is used for his invention. The distributed
> configuration is at the heart of *Reimer*'s disclosure. For this reason
> it is my opinion that a person of ordinary skill in the art would
> understand *Reimer* to be teaching that functions are distributed
> across multiple computer systems . . . .

Wolfe Declaration of February 27, 2012 at ¶ 17, AX000705-706. In other words,

while claim 7 recites the use of the same device for storing the program for processing

the synchronization request and for executing that program, "[n]o such conclusion

can be reached when considering the *Reimer* patent." Wolfe Declaration of June 22,

2012, at ¶ 28, AX000501-502.

Although the Board's findings of fact are reviewed only for "substantial

evidence," *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000), here no evidence has

been offered to contradict Dr. Wolfe's conclusions. Indeed, neither the Examiner nor

the Board directly addressed this portion of Dr. Wolfe's declaration and, to date, only

Examiner argument, which is not a substitute for evidence, has been proffered in

response. Accordingly, Dr. Wolfe's testimony stands un-rebutted and *Reimer* cannot properly be read as anticipating the present claims.

Additionally, as illustrated above, *Reimer* does not disclose a single data processing apparatus capable of performing all of the steps of the method claimed in claim 7 of the '505 Patent. More specifically, *Reimer* fails to disclose a method performed using a single data processing apparatus including a CPU and a storage device that are operatively connected to perform the steps. Instead, the components of *Reimer* are separate and each of the CPUs are not operatively connected to each of the storage devices. Thus, *Reimer* discloses no single data processing apparatus (device) that performs all of the steps of claim 7.

For example, regarding synchronization, the component of the *Reimer* system that has been cited most often in applying *Reimer* to the '505 Patent is the presentation and control component element 104 in Fig. 1 of *Reimer. See, e.g.*, Final Office Action at 8, AX000583. The presentation and control component, however, fails to perform all of the steps recited in claim 7 of the '505 Patent. For example, the Presentation and Control Component(s) cannot perform the step of "synchronizing the requested supplemental information to the video program using the synchronization information" as required by claim 7.

*Reimer* specifically indicates that any attempted synchronization uses the source

table shown in FIG. 8. *Reimer* 22:23-43, AX001198. The source table is located

within the index information database, a computer system that is completely separate

and distinct from the presentation and control component. *See Id.* at 13:16-18 and

6:41-44, AX001194 and AX001190. The index information database is described as a

"file server which has special searching capabilities or another relational database

management system (RDBMS)." *Id.* at 7:19-22, AX001191. These distinctions are

important, as the distributed nature of *Reimer* complicates synchronization.

Other components of the system described by *Reimer* are similarly incapable of

performing all of the steps of claim 7. The user device of *Reimer*, for example, cannot

process a user request for supplemental information, nor is it able to receive

synchronization information related to a video program. Thus, *Reimer* does not

describe any single data processing apparatus having a CPU and storage device capable

of performing all of the steps of claim 7 of the '505 Patent.

2. *Reimer* Fails to Disclose Synchronizing the Requested Supplemental
Information to the Video Program Using the Synchronization Information,
Hence the Rejection of Claim 7 as being Anticipated by *Reimer* is Not
Supported by Substantial Evidence and Should Be Reversed.

Claim 7 requires synchronizing the requested supplemental information to the

video program using the synchronization information. The PTAB rejected claim 7

using a newly introduced construction of "synchronization" as "to represent or arrange

(events) to indicate coincidence or coexistence." PTAB Decision at 6, AX00007.

However, the Board offered no evidence to suggest that this is the definition that

would be understood by a person of ordinary skill in the art and so there is no basis

for concluding same.

Nevertheless, even if the Board's construction of "synchronization" is correct,

*Reimer* still fails to disclose synchronizing the requested supplemental information to

the video program using the synchronization information as recited in claim 7.

Instead, *Reimer* states,

> First, the time code for the current frame is determined. Second,
> the row corresponding to the current scene is retrieved from the
> source table 802. This is done by identifying a scene row in the
> source table 802 where the current frame time code is greater than
> or equal to the value of the first frame time code column 806, and
> less than or equal to the value of the last frame time code column
> 808. Based on the information contained in this scene row, it is
> possible to synchronize the display of the movie with the display
> of the script (the script is retrieved from the foundation
> information database 112).

*Reimer*, 22:22-32, AX001198. The Board relies on this passage for teaching the

synchronization of claim 7. PTAB Decision at 6, AX00007. However, *Reimer*'s time

code is not used to synchronize the movie with the script, but is merely used to

identify the scene row in the source table. Furthermore, *Reimer* only teaches use of a

time-code as a pointer to retrieve a scene row in the source table, after which the

movie and script, *i.e.*, the program and supplemental information, are displayed.

Thus, *Reimer* only describes displaying the movie and script by setting a scroll rate based on frame count with no further adjustment, or synchronization, by the system.

Hence, for at least the reasons provided above, *Reimer* fails to disclose each and every feature of claim 7 and, consequently, cannot anticipate claim 7 or any claim dependent therefrom. Independent claims 12, 16, 26, 27, 32, 40, 42-46, 49-51, and 60-63 include features similar to those of claim 7 and, as such, these claims, and all claims dependent therefrom, are not anticipated by *Reimer* for at least the same reasons as claim 7.

3. *Reimer* Fails to Disclose a Single Server Apparatus that Includes a Controller, a Storage Device, and a Receiver/Transmitter and Synchronizing Supplemental Information to a Video Program, Hence the Rejection of Claim 1 as being Anticipated by *Reimer* is Not Supported by Substantial Evidence and Should Be Reversed.

For reasons similar to those put forth above, claim 1, when properly construed, requires a single server apparatus that includes a controller, a storage device, and a receiver/transmitter. *Reimer* fails to teach such a server. Instead, *Reimer* teaches a distributed network of multiple devices (104, 106, 108, 112, 118, and 122), each configured to perform a different operation, remotely connected to one another via a communication medium (124). *See e.g.*, *Reimer*, Figure 1, and 6:27-8:11, AX001168

and AX001190-AX001191. As such, the components of *Reimer* cannot be said to be included in a single server apparatus as required by claim 1.

Additionally, for at least the reasons provided above, *Reimer* fails to disclose receiving synchronization information and synchronizing supplemental information to a video program as required by claim 1. Hence, for at least these reasons, *Reimer* fails to teach all of the features of claim 1 and, consequently, cannot anticipate claim 1 or any claim dependent therefrom.

4. *Reimer* Fails to Disclose Synchronization Information that Comprises a Time-Code and Updating Said Time-Code at Predetermined Intervals, Hence the Rejections of Claims 5, 10, 15, 30, and 33 as being Anticipated by *Reimer* are Not Supported by Substantial Evidence and Should Be Reversed.

Claim 5 requires synchronization information that comprises a time-code and a program that is adapted update said time-code at predetermined intervals. *Reimer* fails to disclose such features and, consequently, cannot anticipate claim 5.

The PTAB points to *Reimer*'s disclose of a user that "can send a query at any time while viewing or interacting with a movie" as providing the above mentioned features of claim 5. PTAB Decision at 8, AX00009. However, this reliance is misplaced. While *Reimer* may describe such queries, such teachings bear little resemblance to updating a time-code at predetermined intervals of claim 5 at least because a query is not analogous to updating a time-code. Furthermore, the queries of

*Reimer* are sent by users at any time and, as a result, are not performed at predetermined intervals.

Hence, for at least these reasons, *Reimer* fails to teach all of the features of claim 5 and, consequently, cannot anticipate claim 5. Claims 10, 15, 30, and 33 include features similar to those of claim 5 and are not anticipated by *Reimer* for at least the same reasons as claim 5.

> 5. *Reimer* Fails to Disclose Receiving Additional Requests from a Requester to Interactively Change the Requested Supplemental Information Based Upon the Viewed Program and Changing and Transmitting the Requested Supplemental Information in Accordance with the Additional Request, Hence the Rejections of Claims 6, 11, 13, 22, 31, and 37 as being Anticipated by *Reimer* are Not Supported by Substantial Evidence and Should Be Reversed.

Claim 6 requires a receiver/transmitter adapted for receiving additional requests from a requester to interactively change the requested supplemental information based upon the viewed program, said program being further adapted to change and transmit the requested supplemental information in accordance with the additional requests from the requester. *Reimer* fails to disclose such features and, consequently, cannot anticipate claim 6.

*Reimer* only discloses that a user can receive new supplemental information in response to a new request after stopping receiving the previous supplemental information. *See* App. Br. at 55-57, AX000309-AX000311. In contrast, claim 6

requires a request to interactively change (*i.e.*, modify) the requested supplemental

information based upon the viewed program. Such a modification of the requested

supplemental information is made without the requirement for stopping receipt of

previous supplemental information in response to an entirely new request for new

supplemental (*i.e.*, not modified) supplemental information as would be required by

the scheme of *Reimer*. As such, *Reimer* does not enable a user to interactively change

requested supplemental information as recited in claim 6.

Hence, for at least these reasons, *Reimer* fails to teach all of the features of claim

6 and, consequently, cannot anticipate claim 6. Claims 11, 13, 22, 31, and 37 include

features similar to those of claim 6 and are not anticipated by *Reimer* for at least the

same reasons as claim 6.

6. *Reimer* Fails to Disclose a Single Server that Includes a Controller and a
Storage Device and A Storage Device Containing a Second Program, Adapted
to be Executed by the Controller, for Processing the Request for Supplemental
Information, for Receiving Synchronization Information, for Synchronizing the
Supplemental Information to the Video Program, and for Transmitting the
Synchronized Supplemental Information Through the Data Communication
Network to Said Data Processing System, Hence the Rejections of Claims 39
and 41 as being Anticipated by *Reimer* is Not Supported by Substantial
Evidence and Should Be Reversed.

For reasons similar to those put forth above, claim 39, when properly

construed, requires a single server that includes a controller and a storage device.

*Reimer* fails to teach such a server. Instead, *Reimer* teaches a distributed network of multiple devices (104, 106, 108, 112, 118, and 122), each configured to perform a different operation, which devices are remotely connected to one another via a communication medium (124). *See e.g.*, *Reimer*, Figure 1 and 6:27-8:11, AX001168 and AX001190-AX001191. As such, the components of *Reimer* cannot be said to be included in a single server as required by claim 39.

Additionally, for at least the reasons provided above, *Reimer* fails to disclose receiving synchronization information and synchronizing supplemental information to a video program as required by claim 39.

Hence, for at least these reasons, *Reimer* fails to teach all of the features of claim 39 and, consequently, cannot anticipate claim 39 or any claim dependent therefrom. Claim 41 includes features similar to those of claim 39 and is not anticipated by *Reimer* for at least the same reasons as claim 39.


## C. *Reimer* Does Not Teach Verifying that Synchronization is Maintained with the Video Program, Hence the Rejection of Claim 14 in View of *Reimer* is Not Supported by Substantial Evidence and Should be Reversed.

Under § 103(a), a patent is invalid only "if the differences between the subject matter . . . patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having

ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

Obviousness under § 103 hinges on four fact driven findings: "(1) the scope and

content of the prior art; (2) the differences between the prior art and the claims; (3)

the level of ordinary skill in the art; and (4) objective evidence of nonobviousness."

*Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1334 (Fed. Cir.

2004).

Claim 14 is dependent upon claim 12 and is patentable over *Reimer* for at least

the same reasons as claim 12. In adopting the reasoning of the Examiner, the PTAB

emphasized their agreement with the "Examiner's explanation (Ans. 132 (citing

*Reimer*, col. 33, ll. 47-49)) that *Reimer*'s 'anticipatory buffering' involves the obvious

verifying that synchronization is maintained." PTAB Decision at 13-14, AX00013.[1]

However, no evidence has been provided by the Examiner, the PTAB, or the Third

Party Requester demonstrating this to be true. Indeed, the cited portion of *Reimer*

merely states, "[w]ell known techniques for anticipatory buffering enable smooth

scrolling and synchronization." No reference to a verification that synchronization is

maintained with the video program is even suggested by *Reimer* and such a disclosure

is far from inherent to *Reimer* at least because the anticipatory buffering of *Reimer* can

---

[1] The citation to col. 33, ll. 47-49 is wrong; the proper citation is to col. 22, ll. 47-49,

AX001198.

27

be executed for a variety of purposes unrelated to the claimed verification. Hence,

*Reimer* fails to demonstrate that all of the features of claim 14 were known in the art

and, as such, fails to obviate claim 14.

## D. The Combination of *Reimer* and *Feinleib* Does Not Teach a Live Television Broadcast or a Prerecorded Television Broadcast that Includes Synchronization Information or the Display of Supplemental Information that is Synchronized a Live Television Broadcast or a Prerecorded Television Broadcast, Hence the Rejection of Claims 23 and 25 in View of the Combination of *Reimer* and *Feinleib* are Not Supported by Substantial Evidence and Should be Reversed.

Claims 23 and 25 depend from claim 16 and are patentable over *Reimer* for at

least the reasons provided above with regard to claim 16. *Feinleib* is cited for providing

video programming that is either a live television broadcast or a prerecorded television

broadcast as recited by claim 23. Although *Feinleib* discloses supplemental content

relating to live media (*see e.g.*, *Feinleib*, 4:16-29, AX001212), such supplemental

content does not include synchronization information. Additionally, *Feinleib* fails to

disclose the display of supplemental information that is synchronized to a television

broadcast or a prerecorded television broadcast in accordance with the synchronization

information as required by claim 23. Hence, *Reimer*, even when considered in

combination with *Feinleib* fails to demonstrate all of the features of claim 23 were

known in the art at the time of the invention. Thus, the combination of *Reimer* and *Feinleib* fails to obviate claim 23.

*Feinleib* is also cited for providing a reader that is a CD-ROM device as recited by claim 25. However, even if true, such a disclosure fails to overcome the above noted deficiencies of *Reimer*. Consequently, claim 25 remains patentable over *Reimer*, even when considered in combination with *Feinleib*.

## E. The Combination of *Reimer* and *Remillard* Does Not Teach All of the Features of Claim 35, Hence the Rejection of Claim 35 in View of the Combination of *Reimer* and *Remillard* is Not Supported by Substantial Evidence and Should be Reversed.

Claim 35 depends from claim 32 and is patentable over *Reimer* for at least the reasons provided above with regard to claim 32. *Remillard* is cited for providing the use of a credit card transaction to pay for supplemental information as required by claim 35. However, even if true, such a disclosure fails to overcome the above noted deficiencies of *Reimer*. Consequently, claim 35 remains patentable over *Reimer*, even when considered in combination with *Remillard*.

## F. The Combination of *Reimer* and *Baji* Does Not Teach All of the Features of Claim 36, Hence the Rejection of Claim 36 in View of the Combination of *Reimer* and *Baji* is Not Supported by Substantial Evidence and Should be Reversed.

Claim 36 depends from claim 32 and is patentable over *Reimer* for at least the reasons provided above with regard to claim 32. *Baji* is cited for providing for using a service statement to pay for supplemental information as required by claim 36. However, even if true, such a disclosure fails to overcome the above noted deficiencies of *Reimer*. Consequently, claim 36 remains patentable over *Reimer*, even when considered in combination with *Baji*.

## G. The Combination of *Reimer* and *Feinleib* Does Not Teach All of the Features of Claims 47, 48, and 52-54, Hence the Rejection of Claims 47, 48, and 52-54 in View of the Combination of *Reimer* and *Feinleib* are Not Supported by Substantial Evidence and Should be Reversed.

Claims 47, 48, and 52-54 are all independent claims that include features similar to those of claim 7 and are patentable over *Reimer* for at least the same reasons as claim 7. *Feinleib* is cited for providing various features of claims 47, 48, and 52-54 however, even if true, such teachings fail to overcome the above noted deficiencies of *Reimer*. Consequently, claims 47, 48, and 52-54 remain patentable over *Reimer*, even when considered in combination with *Feinleib*.

## H. The Combination of *Reimer* and *Daum* Does Not Teach All of the Features of Claims 55 and 56, Hence the Rejection of Claims 55 and 56 in View of the Combination of *Reimer* and *Daum* are Not Supported by Substantial Evidence and Should be Reversed.

Claim 55 includes features similar to those of claim 7 and is patentable over *Reimer* for at least the same reasons as claim 7. Claim 56 includes features similar to those of claim 16 and is patentable over *Reimer* for at least the same reasons as claim 16. *Daum* is cited for providing various features of claims 55 and 56 however, even if true, such teachings fail to overcome the above noted deficiencies of *Reimer*. Consequently, claims 55 and 56, and any claims dependent therefrom, remain patentable over *Reimer*, even when considered in combination with *Daum*.

## CONCLUSION

For at least the forgoing reasons, the rejections of the claims should be reversed and the matter remanded to the Board with instructions to confirm the patentability of the claims over the cited references.

Date: May 19, 2014

Respectfully submitted,

/s/Tarek N. Fahmi
Tarek N. Fahmi
Attorney for Appellant

Ascenda Law Group, PC
84 W. Santa Clara Street, Suite 550
San Jose, CA 95113-1812

Tel: 866-877-4883
Email: tarek.fahmi@ascendalaw.com

# ADDENDUM



# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/009,918 | 06/23/2011 | 6263505 | 11000361-WDIG-RX918 | 6587 |

27571        7590        11/25/2013
Fahmi, Sellers, Embert & Davitz
84 W. Santa Clara St.
Suite 550
San Jose, CA 95113

| EXAMINER |
|---|
| RALIS, STEPHEN J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/25/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* WALKER DIGITAL, LLC

_____

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1
Technology Center 3900

_____

Before HOWARD B. BLANKENSHIP, STANLEY M. WEINBERG, and
JEREMY J. CURCURI, *Administrative Patent Judges*.

CURCURI, *Administrative Patent Judge*.


DECISION ON APPEAL

Patent 6,263,505 B1 (Walker) is under reexamination. Appellant
appeals under 35 U.S.C. §§ 134(b) and 306 from the Examiner's rejection of
claims 1-64.   App. Br. 6.  We have jurisdiction under 35 U.S.C. §§ 134(b)
and 306, and we heard the appeal on November 6, 2013.

Claims 1-13, 15-22, 24, 26-34, 37-46, 49, 50, 57-59, and 60-64 are
rejected under 35 U.S.C. § 102(e) as anticipated by Reimer (US 5,559,949;
issued Sept. 24, 1996).  Ans. 3-22, 31-45.

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

Claim 14 is rejected under 35 U.S.C. § 103(a) as obvious over Reimer.  Ans. 22-24.

Claims 23 and 25 are rejected under 35 U.S.C. § 103(a) as obvious over Reimer and Feinleib (US 6,637,032 B1; issued Oct. 21, 2003).  Ans. 24-25.

Claim 35 is rejected under 35 U.S.C. § 103(a) as obvious over Reimer and Remillard (US 5,561,709; issued Oct. 1, 1996).  Ans. 25-26.

Claim 36 is rejected under 35 U.S.C. § 103(a) as obvious over Reimer and Baji (US 5,027,400; issued June 25, 1991).  Ans. 26-27.

Claims 55 and 56 are rejected under 35 U.S.C. § 112, first paragraph, as failing to comply with the written description requirement.  Ans. 28-30.

Claims 55 and 59 are rejected under 35 U.S.C. 112, second paragraph. Ans. 30-31.

Claim 51 is rejected under 35 U.S.C. § 103(a) as obvious over Reimer.  Ans. 45-46.

Claims 47, 48, and 52-54 are rejected under 35 U.S.C. § 103(a) as obvious over Reimer and Feinleib.  Ans. 47-53.

Claims 55 and 56 are rejected under 35 U.S.C. § 103(a) as obvious over Reimer and Daum (US 5,815,634; issued Sept. 29, 1998).  Ans. 53-76.

The Examiner has withdrawn earlier rejections of claims 54 and 64 under 35 U.S.C. § 112, first paragraph, and claim 51 under 35 U.S.C. § 305. Ans. 76-77.

We affirm.

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

## STATEMENT OF THE CASE

Appellant's invention relates to providing supplemental information related to video programs. Abstract. Claim 7 is illustrative and reproduced below:

7.    A method for providing supplemental information using a data processing apparatus including a CPU and a storage device operatively connected to the CPU and containing a program adapted to be executed by the CPU for processing a request for the supplemental information related to a video program and providing the requested supplemental information, said method comprising the steps of:

receiving a request for the supplemental information related to the video program;

receiving synchronization information related to the video program;

processing the request for the supplemental information by having the CPU in the data processing apparatus execute the program;

synchronizing the requested supplemental information to the video program using the synchronization information; and

transmitting the requested supplemental information.


## ANALYSIS

### THE ANTICIPATION REJECTION OF CLAIMS 1-13, 15-22, 24, 26-34, 37-46, 49, 50, 57-59, AND 60-64 BY REIMER

Upon careful review, we find unpersuasive Appellant's arguments (App. Br. 23-63, 70-74; Reply Br. 5-8) and evidence (App. Br. Evidence Appendix), including both declarations from Andrew Wolfe, that the

3

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

Examiner erred in finding claims 1-13, 15-22, 24, 26-34, 37-46, 49, 50, 57-59, and 60-64 are anticipated by Reimer (Ans. 3-22, 31-45). Based on the record, we adopt the Examiner's findings and reasons as our own, and we also adopt the Examiner's response to Appellant's Appeal Brief (Ans. 77-131, 144-150). We concur with the conclusions reached by the Examiner. Accordingly, we sustain the rejection of claims 1-13, 15-22, 24, 26-34, 37-46, 49, 50, 57-59, and 60-64. We note that we have reviewed both declarations from Andrew Wolfe, and based on the record in its entirety, we are not persuaded of error. We further highlight the following for emphasis.

*Claim 7*

Appellant argues (i) claim 7 requires a single data processing apparatus that performs multiple steps, and Reimer does not describe a single data processing apparatus. App. Br. 23-33. At Oral Hearing, Appellant noted the Examiner's use of a 2012 dictionary.

In response, the Examiner explains the claims do not recite "a single computer or device", the term "apparatus" includes a set of equipment designed for a particular use, and Reimer (Figures 1 and 2) discloses the claimed apparatus as a set of equipment. Ans. 77-80. The Examiner further explains Reimer discloses that components may be implemented into a single computer. Ans. 80-81 (citing Reimer, col. 6, ll. 45-51).

Appellant's Specification (col. 3, ll. 45-47) states "[t]he present invention also provides an apparatus which integrates the video program and the supplemental information on the same monitor." Notably, Appellant does not define the term "apparatus" in the Specification, but rather

4

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

describes the integration of the video program and the supplemental information in connection with preferred embodiments. Therefore, a broad, but reasonable, construction of the term "apparatus" is its plain meaning where the term "apparatus" is defined in pertinent sense as "**1 a :** a set of materials or equipment designed for a particular use."[1]

With this definition and construction, we see no error in the Examiner's reliance on Reimer for describing all limitations of claim 7. The plain meaning of the term "apparatus" does not preclude the "apparatus" from being composed of a set of materials or equipment and therefore multiple components that cooperate to integrate the video program and the supplemental information, such as Reimer's multiple components (Figures 1 and 2).

Further, because we construe claim 7 as not requiring a "single" computer or device, we need not address whether Reimer describes all limitations of claim 7 in a single computer or device.

Appellant also argues (ii) that Reimer does not describe the recited "synchronizing the requested supplemental information to the video program using the synchronization information." App. Br. 33-40.

In response, the Examiner explains Reimer's synchronizing the movie with the display of the movie script describes the recited synchronizing. Ans. 92-93 (citing Reimer, col. 22, ll. 19-49).

Appellant's Specification (col. 6, ll. 2-6) states "[t]hroughout the video program, the viewer receives supplemental images, audio, dialogue, scenes and information synchronized to the specific actions and events

---

[1] *Webster's Ninth New Collegiate Dictionary* 96 (1990).

5

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

occurring within the video program." Notably, Appellant does not define the term "synchronize" in the Specification, but rather describes receiving supplemental information synchronized to the video program in connection with preferred embodiments. Therefore, a broad, but reasonable, construction of the term "synchronize" is its plain meaning where the term "synchronize" is defined in pertinent sense as "**1 :** to represent or arrange (events) to indicate coincidence or coexistence."[2]

With this construction, we see no error in the Examiner's reliance on Reimer for describing the recited synchronizing.

Reimer (col. 22, ll. 22-32) describes

> First, the time code for the current frame is determined. Second, the row corresponding to the current scene is retrieved from the source table 802. This is done by identifying a scene row in the source table 802 where the current frame time code is greater than or equal to the value of the first frame time code column 806, and less than or equal to the value of the last frame time code column 808. Based on the information contained in this scene row, it is possible to synchronize the display of the movie with the display of the script (the script is retrieved from the foundation information database 112).

Reimer arranges the display of the script and the display of the movie to indicate coincidence. Thus, Reimer describes synchronizing the requested supplemental information (Reimer's script) to the video program using the synchronization information (Reimer's time code for the current frame), as recited in claim 7. Notably, Reimer's time code is *used* in the synchronization process, and the broad claim language does not preclude a finding that Reimer teaches the argued limitation.

---

[2] *Webster's Ninth New Collegiate Dictionary* 1197 (1990).

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

## *Claim 12*

Appellant argues Reimer does not disclose receiving and processing program identification information, noting that Reimer relies on knowing what program is being displayed.  App. Br. 40-43.  In response, the Examiner explains Reimer discloses selection from a list of items as selection and reception of the program identification information, and discloses further processing of the program identification information.  Ans. 97 (citing Reimer, col. 14, l. 31 - col. 15, l. 60, Figure 9A).  We agree with the Examiner.

## *Claim 1*

Appellant argues claim 1 requires one single server.   App. Br. 45.   In response, the Examiner explains a "server apparatus" is an "apparatus" that performs "server functionality" and is described in Reimer.  Ans. 103- 105.  We agree with the Examiner for similar reasons as discussed above when addressing claim 7.

## *Claims 2 and 8*

Appellant argues Reimer does not describe the recited audio and visual information.  App. Br. 47-48. In response, the Examiner explains Reimer describes supplemental information including audio and visual information.  Ans. 106-108 (citing Reimer, col. 3, l. 33 - col. 4, l. 13; col. 6, ll. 1-7).  We agree with the Examiner.

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

*Claim 3*

Appellant argues Reimer does not perform database maintenance. App. Br. 49-50. In response, the Examiner explains Reimer's index interface component 118 and index information database 122 are relational database management systems, and perform database maintenance. Ans. 108-111. We agree with the Examiner.

*Claims 4, 9, 21, and 28*

Appellant argues Reimer does not describe the recited program identification information. App. Br. 50-53. In response, the Examiner explains Reimer discloses selection from a list of items as selection and reception of the program identification information, and discloses further processing of the program identification information. Ans. 112 (citing Reimer, col. 14, l. 31 - col. 15, l. 60, Figure 9A). We agree with the Examiner.

*Claims 5, 10, 15, 30, and 33*

Appellant argues Reimer does not describe updating the time-code at predetermined intervals. App. Br. 53-55. In response, the Examiner explains Reimer's user can send a query at any time while viewing or interacting with a movie. Ans. 116 (citing Reimer, col. 16, ll. 15-17). We agree with the Examiner.

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

*Claims 6, 11, 13, 22, 31, and 37*

Appellant argues "Reimer's teaching to stop watching the supplemental information to request for different supplemental information does not anticipate 'receiving additional requests from a requestor to interactively change the requested supplemental information based upon the viewed program.'"   App. Br. 57.  In response, the Examiner again explains Reimer's user can send a query at any time while viewing or interacting with a movie, and this functionality changes the requested supplemental information.  Ans. 121 (citing Reimer, col. 16, ll. 15-17).  We agree with the Examiner.

*Claims 16, 18-20, and 24*

Appellant presents arguments similar to those presented for claim 7. App. Br. 57-58. In response, the Examiner refers to the Examiner's response for claim 7.  Ans. 123. Again, we agree with the Examiner.

*Claim 17*

Appellant argues Reimer does not describe an integrated system including the display device and the data processing apparatus.  App. Br. 58-59.  In response, the Examiner explains Reimer's user devices 106 and control component 104 are operatively integrated, and Reimer also discloses that components may be implemented into a single computer.  Ans. 123-128. We agree with the Examiner, and in passing note that our conclusion is not inconsistent with the plain meaning of "integrate" which is defined in

9

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

pertinent sense as "**1 :** to form, coordinate, or blend into a functioning or unified whole."[3]

### Claims 26, 27, and 29

Appellant presents arguments similar to those presented for claim 7. App. Br. 59. In response, the Examiner refers to the Examiner's response for claim 7. Ans. 128. Again, we agree with the Examiner.

### Claims 32, 34, and 38

Appellant presents arguments similar to those presented for claim 4. App. Br. 59-60. In response, the Examiner refers to the Examiner's response for claim 4. Ans. 128-129. Again, we agree with the Examiner.

### Claims 39 and 41

Appellant argues claim 39 requires the single server configured for receiving synchronization information, for synchronizing the supplemental information to the video program, and for transmitting the synchronized supplemental information through the data communication network to the data processing system. Appellant argues the rejection of claim 41 should be withdrawn for similar reasons. App. Br. 61.

In response, the Examiner explains

Reimer et al. discloses a server (column 7, line 66 - column 8, line 11) including a controller and a storage device operatively connected to the controller (Reimer et al.; column 8, lines 40-50, 55-57). Therefore[,] due to the broadest interpretation of the

---

[3] *Webster's Ninth New Collegiate Dictionary* 628 (1990).

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

claims, the Examiner maintains the position that Reimer et al. anticipate[s] the system of claims 39 and 41.

Ans. 130.   We agree with the Examiner for similar reasons as discussed above when addressing claim 7.

### Claims 40 and 42

Appellant presents arguments similar to those presented for claim 7. App. Br. 61-62. In response, the Examiner refers to the Examiner's response for claim 7.   Ans. 131. Again, we agree with the Examiner.

### Claim 43

Appellant argues Reimer does not describe the recited program identification information including a code for identifying the program. App. Br. 62-63.

In response, the Examiner explains Reimer's list of items would include titles, etc. that would essentially include a system of symbols for communication.  Ans. 131 (citing Reimer, col. 5, ll. 34-54; col. 14, l. 42 - col. 15, l. 5; col. 22, ll. 19-33).  We agree with the Examiner.

### Claim 44

Appellant argues Reimer does not describe providing the movie script and the answer to the query in video.  App. Br. 70.  In response, the Examiner explains Reimer describes supplemental information being video information.  Ans. 145 (citing, Reimer, col. 4, ll. 6-13).  We agree with the Examiner.

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

### *Claims 45 and 46*

Appellant argues claims 45 and 46 are patentable for the same reasons as claim 7.  App. Br. 70.  We agree with the Examiner for the same reasons discussed above when addressing claim 7.

### *Claim 49*

Appellant argues Reimer does not describe the simulcast event database stored within the storage device as recited in claim 49.  App. Br. 71.  In response, the Examiner explains Reimer discloses a set of equipment designed for a particular use including a CPU and storage device, and notes Reimer's databases for describing the simulcast event database.  Ans. 146 (citing Reimer, Figures 8, 13A, 13B).  We agree with the Examiner.

### *Claim 50*

Appellant argues claim 50 is patentable for the same reasons as claims 7 and 12.  App. Br. 72.  We agree with the Examiner for the same reasons discussed above when addressing claims 7 and 12.

### *Claims 57-59 and 64*

Appellant does not separately argue claims 57-59 and 64 with particularity.

### *Claims 60-62*

Appellant argues Reimer does not describe synchronizing the requested supplemental information to the video program by directly using

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

the synchronization information (time-code).  App. Br. 72.  In response, the Examiner explains that in Reimer the requested information is retrieved and synchronized to the video program utilizing the first frame time codes. Ans. 147-148 (citing Reimer, col. 20, l. 65 - col. 21, l. 9).  We agree with the Examiner.

### *Claim 63*

Appellant argues Reimer does not describe receiving program identification information as recited in claim 63.  App. Br. 73-74.  In response, the Examiner explains Reimer discloses selection from a list of items as selection and reception of the program identification information, and discloses further processing of the program identification information. Ans. 148 (citing Reimer, col. 14, l. 31 - col. 15, l. 60, Figure 9A).  We agree with the Examiner.

### THE OBVIOUSNESS REJECTION OF CLAIM 14 OVER REIMER

Upon careful review, we find unpersuasive Appellant's arguments (App. Br. 63-66) and evidence (App. Br. Evidence Appendix) that the Examiner erred in concluding claim 14 is obvious over Reimer (Ans. 22-24). Based on the record, we adopt the Examiner's findings and reasons as our own, and we also adopt the Examiner's response to Appellant's Appeal Brief (Ans. 131-134).  We concur with the conclusion reached by the Examiner. Accordingly, we sustain the rejection of claim 14.

In reaching our conclusion, we emphasize that we agree with the Examiner's explanation (Ans. 132 (citing Reimer, col. 33, ll. 47-49)) that

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

Reimer's "anticipatory buffering" involves the obvious verifying that
synchronization is maintained.

## THE OBVIOUSNESS REJECTION OF CLAIMS 23 AND 25 OVER REIMER AND FEINLEIB

Upon careful review, we find unpersuasive Appellant's arguments
(App. Br. 66-68) and evidence (App. Br. Evidence Appendix) that the
Examiner erred in concluding claims 23 and 25 are obvious over Reimer and
Feinleib (Ans. 24-25).  Based on the record, we adopt the Examiner's
findings and reasons as our own, and we also adopt the Examiner's response
to Appellant's Appeal Brief (Ans. 134-138).  We concur with the conclusion
reached by the Examiner.  Accordingly, we sustain the rejection of claims 23
and 25.

In reaching our conclusion, we emphasize that we agree with the
Examiner's conclusion (Ans. 135-137) that insufficient evidence of due
diligence has been provided for the period from January 1997 to April 1997.

## THE OBVIOUSNESS REJECTION OF CLAIM 35 OVER REIMER AND REMILLARD

Upon careful review, we find unpersuasive Appellant's arguments
(App. Br. 68)  and evidence (App. Br. Evidence Appendix) that the
Examiner erred in concluding claim 35 is obvious over Reimer and
Remillard (Ans. 25-26).  Based on the record, we adopt the Examiner's
findings and reasons as our own, and we also adopt the Examiner's response
to Appellant's Appeal Brief (Ans. 138-139).  We concur with the conclusion
reached by the Examiner. Accordingly, we sustain the rejection of claim 35.

14

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

THE OBVIOUSNESS REJECTION OF CLAIM 36 OVER REIMER AND BAJI

Upon careful review, we find unpersuasive Appellant's arguments
(App. Br. 69) and evidence (App. Br. Evidence Appendix) that the
Examiner erred in concluding claim 36 is obvious over Reimer and Baji
(Ans. 26-27). Based on the record, we adopt the Examiner's findings and
reasons as our own, and we also adopt the Examiner's response to
Appellant's Appeal Brief (Ans. 139). We concur with the conclusion
reached by the Examiner. Accordingly, we sustain the rejection of claim 36.

THE WRITTEN DESCRIPTION REJECTION OF CLAIMS 55 AND 56

Upon careful review, we find persuasive Appellant's arguments (App.
Br. 69, Reply Br. 9-10) that the Examiner erred in concluding claims 55 and
56 fail to comply with the written description requirement (Ans. 28-30, 139-
142).

"[T]he test for sufficiency [of the written description] is whether the
disclosure of the application relied upon reasonably conveys to those skilled
in the art that the inventor had possession of the claimed subject matter as of
the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351
(Fed. Cir. 2010) (en banc) (citations omitted).

We find the disclosure in the Specification adequate to reasonably
convey to those skilled in the art that Appellant had possession of the
claimed subject matter recited in claims 55 and 56. In reaching our
conclusion, we note our construction of the terms "apparatus" and
"integrate" discussed above.

15

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

We, therefore, do not sustain the Examiner's rejection of claims 55 and 56 under 35 U.S.C. § 112, first paragraph.

THE REJECTION OF CLAIMS 55 AND 59 UNDER 35 U.S.C. § 112, SECOND PARAGRAPH

Upon careful review, we find persuasive Appellant's arguments (App. Br. 69, Reply Br. 10) that the Examiner erred in concluding claims 55 and 59 fail to meet the requirements of 35 U.S.C. 112, second paragraph (Ans. 30-31, 142-144).

We, therefore, do not sustain the Examiner's rejection of claims 55 and 59 under 35 U.S.C. § 112, second paragraph.

THE OBVIOUSNESS REJECTION OF CLAIM 51 OVER REIMER

Appellant argues claim 51 is patentable for the same reasons as claims 7 and 14. App. Br. 74. We agree with the Examiner for the same reasons discussed above when addressing claims 7 and 14.

THE OBVIOUSNESS REJECTION OF CLAIMS 47, 48, and 52-54 OVER REIMER AND FEINLEIB

Upon careful review, we find unpersuasive Appellant's arguments (App. Br. 74-76) and evidence (App. Br. Evidence Appendix) that the Examiner erred in concluding claims 47, 48, and 52-54 are obvious over Reimer and Feinleib (Ans. 47-53). Based on the record, we adopt the Examiner's findings and reasons as our own, and we also adopt the Examiner's response to Appellant's Appeal Brief (Ans. 151-155). We

16

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

concur with the conclusion reached by the Examiner. Accordingly, we sustain the rejection of claims 47, 48, and 52-54.

In reaching our conclusion, we emphasize that we agree with the Examiner's conclusion (Ans. 151) that insufficient evidence of due diligence has been provided for the period from January 1997 to April 1997.

THE OBVIOUSNESS REJECTION OF CLAIMS 55 AND 56 OVER REIMER AND DAUM

Upon careful review, we find unpersuasive Appellant's arguments (App. Br. 76-77) and evidence (App. Br. Evidence Appendix) that the Examiner erred in concluding claims 55 and 56 are obvious over Reimer and Daum (Ans. 53-76). Based on the record, we adopt the Examiner's findings and reasons as our own, and we also adopt the Examiner's response to Appellant's Appeal Brief (Ans. 156-157). We concur with the conclusion reached by the Examiner. Accordingly, we sustain the rejection of claims 55 and 56.

ORDER

The Examiner's decision rejecting claims 1-64 is affirmed.

Extensions of time for taking any subsequent action in connection with this appeal are governed by 37 C.F.R. § 1.550(c). *See* 37 C.F.R. § 41.50(f).

AFFIRMED

17

Appeal 2013-008233
Reexamination Control 90/009,918
Patent 6,263,505 B1

PATENT OWNER:

FAHMI, SELLERS, EMBERT, & DAVITZ LLP
84 W. Santa Clara Street
Suite 550
San Jose, CA  95113

THIRD PARTY REQUESTER:

ANDREW McALEAVEY
PATENTBLAST
4600 Adeline Street, #101
Emeryville, CA  94608

# PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing paper entitled

## APPELLANT'S BRIEF (CORRECTED)

was filed with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF SYSTEM. Counsel registered with the CM/ECF system have been served by operation of the Court's CM/ECF SYSTEM per Fed. R. App. P. 25 and Fed. Cir. R. 25(c) on the 20th day of May 2014.

Date: May 20, 2014

/s/Tarek N. Fahmi
Tarek N. Fahmi
Attorney for Appellant

Ascenda Law Group, PC
84 W. Santa Clara Street, Suite 550
San Jose, CA 95113-1812

Tel: 866-877-4883
Email: tarek.fahmi@ascendalaw.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and contains 7056 words (exclusive of the corporate disclosure statement, table of contents, table of authorities, addendum and proof of service).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

The brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in 14-point Adobe Garamond Pro font.

                                        Respectfully submitted,


Date: May 19 2014                       /s/Tarek N. Fahmi
                                        Tarek N. Fahmi
                                        Attorney for Appellant


Ascenda Law Group, PC
84 W. Santa Clara Street, Suite 550
San Jose, CA 95113-1812

Tel: 866-877-4883
Email: tarek.fahmi@ascendalaw.com